

FILED & JUDGMENT ENTERED
David E. Weich

Dec 14 2007

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
J. Craig Whitley
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
WILKESBORO DIVISION**

```
In re:                          )
                                )   Case No.  07-50529
RONALD SCOTT HOUSER,            )   Chapter 13
JOYCE DEAN HOUSER,              )
    a/k/a DEANIE HOUSER,        )
                                )
            Debtors.            )
_____)
```

**ORDER**

This matter is before the Court upon eCAST Settlement Corporation's ("eCAST") Objection to Confirmation of Chapter 13 Plan. A hearing was held September 6, 2007.

Unsecured creditor eCAST maintains the Debtor's proposed Chapter 13 plan is nonconfirmable under Code Section 1325(b), because: 1) the proposed plan term is less than the applicable commitment period; 2) the plan fails to commit all projected disposable income to the plan; 3) the debtors have claimed inappropriate expense deductions, including ownership expenses for a vehicle owned outright and secured debt payments on a

1

camper; and 4) the plan impermissibly diverts projected disposable income from unsecured creditors to secured debts.

Having considered the matter, the undersigned agrees with some, but not all, of eCAST's assertions. However, I agree that this plan is not confirmable.

**Holding**: (1) The applicable commitment period mandated by 11 U.S.C. § 1325(b)(4) for above median debtors is sixty months. Since the Housers' proposed fifty month plan is less, and because the proposed plan does not pay unsecured creditors in full, it may not be confirmed.

(2) An initial presumption lies that the disposable income reported in a debtor's Form B22C means test is also the debtor's "projected disposable income under 1325(b)(1)(B)." A debtor may rebut this presumption by showing that the B22C figure does not adequately reflect his prospective finances, both as to income and his expenses. Here, the debtor's have failed to overcome that presumption.

(3) The means test expense allowances found at § 707(b)(2)(A)(ii)(I) are made only to debtors to whom the expenses apply. If a debtor does not have a loan or lease payment, the Local Standard for transportation ownership expense is not "applicable." Therefore, a debtor who owns his automobile outright many not claim this allowance on Form B22C; and

(4) Because this plan proposes to retain a camper and to

2

pay that secured claim out of projected disposable income, it is not confirmable. A camper is not a reasonable necessity under 11 U.S.C. § 707(b)(2)(A) and (B). *See* 11 U.S.C. § 1325(b)(3).

(5) Similarly, because § 1325(b)(1)(B) requires a debtor to pay all of his projected disposable income exclusively to unsecured claims, a plan that diverts projected disposable income to secured creditors is not confirmable in the face of an objection.

## STATEMENT OF FACTS

1. The Housers filed this Chapter 13 case on June 12, 2007. Their bankruptcy schedules report monthly gross income of $10,434; net income of $7,154.00; and monthly expenses of $4,820.00. By these schedules, the Housers have monthly disposable income of $2,334.00. *See* Schedules I & J.

2. The Housers' Form B22C means test reflects joint monthly income of $11,081.93. Annualized, the Housers have current monthly income ("CMI") of $132,983.16, making them "above median income" debtors for § 1325(b)(3) purposes.[1]

3. In the Form B22C, the Housers claim monthly expenses of $8,471.59. Thus, per the "means test," the debtors have monthly disposable income of $2,610.34, or $276 more than the sum shown in Schedules I & J.

---

[1] The applicable median family income is $52,160.00 for a family of three in North Carolina.

3

4. eCAST holds an unsecured credit card debt of $39,950.69. This claim represents approximately 37% of the Housers' scheduled general unsecured debts.

5. The Housers' have proposed a Plan under which they would pay the Trustee fifty (50) monthly payments of $1,500.00. Via their plan payments, the Housers propose to pay a priority tax debt ($1,385.50) in full; repay a secured car loan to GMAC ($19,398.14); and (at a maximum) return 41% percent of general unsecured claims, such as eCAST's.

6. The Housers' plan further contemplates that the debtors retain a 2006 Starcraft Camper and that they make direct payments ($205.75/month) on this $16,485.33 secured debt. This payment is expensed in both the means test and in Schedule J.

7. Further, in their means test the Housers claim a monthly ownership expense of $332.00 for their 1992 Toyota Corolla. This vehicle is owned free and clear of any car loans or security interests.

## DISCUSSION

This dispute requires interpretation of several new terms added by the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") to Code Section 1325(b)1)(B). That provision now states:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the

4

> plan, then the court may not approve the plan unless, as of the effective date of the plan—…
>
> (B) the plan provides that all of the debtor's **projected disposable income** to be received in the **applicable commitment period** beginning on the date that the first payment is due under the plan will be **applied to make payments to unsecured creditors** under the plan. (emphasis added)

The overall premise is simple: Under § 1325(b), Chapter 13 debtors are required to use all of their "projected disposable income" to pay unsecured creditors during the mandated length of their plan. However, the exact meaning, and application, of these new phrases has proven vexing to bankruptcy courts since the amendments became effective in October 2005.

## I. APPLICABLE COMMITMENT PERIOD

eCAST's first objection to this plan is that the proposed fifty month term is less than the "applicable commitment period" for above median debtors such as the Housers. I agree.

"Applicable Commitment Period" is defined as

> (ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than—…
>
> (II) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals…11 U.S.C. § 1325 (b)(4)(A)(ii).

5

Under § 1325(b)(4)(B), a plan may have a term less than the Applicable Commitment Period "…only if the plan provides for payment in full of all allowed unsecured claims over a shorter period."

The Housers easily exceed the median income level ($52,160.00) for a North Carolina family of three. They are indisputably "above median income" debtors. Accordingly, their plan must either run five years or pay all unsecured claims in full over a shorter period of time.

This plan does neither. The term is only 50 months and at most, it will pay only 41% to general unsecured creditors.

The Housers' only counter argument is that they proposed the plan term in good faith and in reliance on the Chapter 13 Trustee's 85-10 Rule.

The "85-10 rule" is a convention created by district trustees at the advent of the new law. The § 1325(b) requirements become effective only if a confirmation objection is filed, and this happens infrequently. The 85-10 Rule was designed to set minimum requirements for Chapter 13 plans where there is no objection. These must:  (1) have a term of at least 85% of the debtors' applicable commitment period and (2) they must pay at least 10% of general unsecured claims.

Of course, where as here, a confirmation objection has been lodged, the § 1325(b) provisions override the Rule. Since this

6

plan neither meets the applicable commitment period nor pays 100% on unsecured claims, it may not be confirmed over objection.

eCAST presses further seeking a ruling that the applicable commitment period for the Housers' Chapter 13 plan is a temporal concept (i.e., a fixed time period), as opposed to a monetary term (a "multiplier.").

Courts split on this question, with the majority considering the applicable commitment period to be a temporal requirement. Contrast *In re Alexander*, 344 B.R. 742, 751 (Bankr. E.D.N.C. June 30, 2006)(temporal) with *In re Fuger*, 347 B.R. 94 (Bankr. D. Utah June 29, 2006)(Multiplier).

This issue becomes important when a debtor proposes an early payoff of a confirmed plan. Here, however, the plan is as yet unconfirmed. Thus, the question does not appear ripe for decision.

**II. PROJECTED DISPOSABLE INCOME**

Since § 1325(b)(2) requires a debtor to devote "all of his projected disposable income to be received in the applicable commitment period" to his plan, our dispute next turns to the meaning of the phrase "projected disposable income."

"Projected disposable income" is not defined in the Bankruptcy Code. However, "disposable income," was a defined term under old law, and one that has been amended by BAPCPA.

7

Currently, for an above median debtor,[2] "disposable income" means "current monthly income" as defined under § 1010(1)(A), less amounts "reasonably necessary to be expended" as per § 707(b)(2)(A) & (B). *See* 11 U.S.C. § 1325 (b)(3).

The bankruptcy courts are split over the meaning of "projected disposable income." Some emphasize the phrase "disposable income," holding that an above median debtor must make payments based upon "disposable income" derived from the Form B22C means test.[3] *See In re Barr*, 341 B.R. 181 (Bankr. M.D. N.C. 2006); *In re Alexander*, 344 B.R. 742 (Bankr. E.D.N.C. 2006).

Others emphasize the word "projected" as a modifier of the term "disposable income." These courts hold that while Form B22C "disposable income" is initially presumed to be the debtor's "projected disposable income," the debtor may rebut the presumption by showing that the means test does not adequately represent his projected actual finances. *In re Jass*, 340 B.R. 411 (Bankr. D. Utah 2006); *In re Edmunds*, 350 B.R. 636 (Bankr. D.S.C. 2006).

If the debtor's incomes and expenses are stable, the different approaches will have little disparate effect on the

---

[2] For below median debtors, most courts hold that projected disposable income may be determined from Schedules I&J. *See In re Edmunds*, 350 B.R. 636 (Bankr. D.S.C. Sept. 18, 2006).

[3] The means test employs a six month historical average of the debtor's income; and normative, allowance based expense figures . Thus, for many debtors, the means test does not reflect their "real world" ability to pay.

8

plan. Where the debtor's finances have changed, however, the impact can be significant. For example, a debtor who was unemployed for most of the six months before bankruptcy but finds a job near the filing date, may have little "disposable income" under the means test, but a significant prospective ability to make payments to creditors. The converse is also true. Loss of a job near the petition date will lead to apparent, but illusory, projected disposable income.

A second potential distortion caused by equating "disposable income" with "projected disposable income" is that the former is based in part on normative allowances derived from IRS collections standards. *In re Slusher*, 359 B.R. 290, 306-07 (Bankr. D. Nev. 2007). These estimated expense norms, applicable to families of the same size and in the same geographic location as the debtors, while presumptively accurate, may prove to have little correlation to a given debtor's actual expenses. *See In re Plumb*, 373 B.R. 429, 439-40 (Bankr. W.D.N.C. March 16, 2007).

In our case, eCAST picks and chooses between the two theories as to the meaning of "projected disposable income." It suggests "projected disposable income" is a forward-looking concept such that we may review the debtor's post confirmation **income.** On the other hand, eCAST say debtor's projected **expenses** must be computed from the backward looking and normative figures found in the means test. In short, eCAST adopts an "apples and

9

oranges," and even "oranges and tangerines" approach. This court rejects this opportunistic, but untenable, theory.

I agree "projected disposable income" is a forward-looking concept. If a debtor can demonstrate that his actual prospective disposable income differs from that elicited in the means test, we use the prospective income in calculating plan payments. This court held accordingly in *In re Plumb*, 373 B.R. 429 (March 16, 2007)(Hodges, J.). However, I also believe this forward looking approach may be extended to the expense component of "projected disposable income" in appropriate circumstances.

First, the clear language of § 1325(b)(1)(B) requires that the plan pay all "projected disposable income." There is a tension here. Admittedly, "disposable income" is a historical construct. However, "projected" is future oriented and principles of statutory interpretation demand that this word be given independent significance from "disposable income."

The result:

> By placing the word "projected" next to "disposable income" in § 1325(b)(1)(B), Congress modified the import of "disposable income." The significance of the word "projected" is that it requires the Court to consider both future and historical finances of a debtor in determining compliance with § 1325(b)(1)(B).

*Jass*, 340 B.R. at 416.

The *Jass* conclusion appears mandated by the plain meaning of § 1329(b). It also is an interpretation which effectuates the congressional purpose and avoids an absurd result.

10

The means test, upon which Form B22C is based, intended to force debtors who possess the ability to pay a meaningful sum to their creditors into Chapter 13. Sections 1325(b)(1)-(3), in turn, helps determine how much that Chapter 13 debtor must pay creditors under the plan.

To require a debtor in all instances to make payments calculated upon projected future income, minus past and often abstract expenses, divorces the plan from that reality. Even eCAST admits this. In arguing for prospective income, eCAST quotes a case the surmises the problem. If we use only historical figures, the debtor is thrown into a "…parallel universe which sometimes has little or nothing to do with debtor's actual financial situation." *In re Gress*, 344 B.R. 919, 922 (Bankr. W.D. Mo. 2006).

Because both are equal components of "disposable income," that parallel universe may be reached as easily by using unrealistic expense figures as it is by using unrealistic income. In short, we may presume round fruits are apples, but must maintain the flexibility to recognize that they may turn out to be oranges. Doing otherwise, not only is intellectually inconsistent, but also contrary to the Chapter 13 scheme.

Success of the plan depends on a string of future payments. If we bind the debtor to a payment amount divorced from his actual ability to pay, two incongruent results may occur. If

actual ability to pay is greater than means test income, creditors are paid less than they should be, and the debtor obtains a windfall. Conversely, if the debtor is absolutely bound to make a payment that is beyond his means, the plan fails. In that case, both the debtor and his creditors lose.

Both results are incongruent with the overall Chapter 13 statutory scheme. Thus, to maintain that income is always forward looking but expenses are entirely historical is an absurd construction of § 1325(b). We are bound to construe statutes in a fashion designed to avoid absurdity. *Jass*, 340 B.R. at 415.

I therefore adopt the reasoning of *Jass*, *Edmunds* and *Plumb*. An initial presumption lies that the debtor's disposable income as reported in the means test is also the debtor's "projected disposable income" under § 1325(b)(1)(B). *Id.* A debtor may rebut this presumption by showing that the B22C figure does not accurately reflect his prospective ability to make payments under a plan. *Id.* at 416. In such circumstances, a court may consider the debtor's financial projections, including those reported in his Schedules I & J.

Applying the law to this case, the Housers have failed to overcome the presumption that the means test "disposable income" is also their "projected disposable income." Apart from the basic undisputed facts, the debtors did not produce evidence

12

that would explain why Schedule I income is $279 lower than that reported in the means test.

The basic differences between Schedule J expenses and those in Form B22C are (1) the use of allowances in Form B22C, and (2) the claimed expense deductions for the camper payment and the ownership expense for the unencumbered automobile. There is no evidence that would make the use of the B22C allowances inadequate, and, as we will see below, the other deductions are not allowable. Thus, I conclude the Housers' "projected disposable income" is the same as their "disposable income," with an "addback" for the improper deductions ($11,081.93 – $8,471.59 = $2,610.34 + $205.75 + $332.00 = $3,148.00). At $1,500 per month, the proposed plan pays much less than this sum.

### Vehicle Ownership Expense

eCAST believes the Housers overstated their expenses in Form B22C by claiming a full vehicle ownership allowance for a vehicle they own outright. I agree.

On Line 29a of Form B22C, the Debtors deduct $332.00 as a transportation ownership/lease expense for a 1992 Toyota Corolla. On Line 29b, the Debtors indicate that the monthly payment for that vehicle is $0.

For a debtor whose current monthly income exceeds the median family income of her state, as here, reasonable necessity

is determined in accordance with the provisions of 11 U.S.C. § 707(b)(2)(A) and (B). 11 U.S.C. § 1325(b)(3). Section 707(b)(2)(A)(ii) provides a detailed enumeration of expenses that are reasonably necessary and how they are quantified. A debtor's permissible expenses are specified in standardized tables promulgated by the Internal Revenue Service.

Section 707(b)(2)(A)(ii)(I) provides, in relevant part, the following:

> The debtor's monthly expenses shall be the debtor's **applicable monthly expense** amounts specified under the National Standards and the Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides… (emphasis added)

The plain language of the statute controls, unless a literal reading of the statute is contrary to the intention of the drafters. *See In re Hardacre*, 338 B.R. 718, 725 (Bankr. N.D. Tex. 2006) (*citing United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989)). Congress enacted the means testing provisions of the Bankruptcy Code to ensure that those debtors who can afford to pay a portion of their unsecured debts are required to do so. *Id.* (*citing* 151 Cong. Rec. S 2470 (March 10, 2005)). The language of the statute and legislative intent of the means testing provisions make clear that a debtor with no loan or lease payments cannot claim an ownership expense that is listed in the Local Standards.

14

As interpreted by the majority of courts addressing the issue, by using the word "applicable," Congress limited the allowances in § 707(b)(2)(A)(ii)(I) to those debtors for whom the expenses apply — i.e., for the vehicle ownership expense, a debtor who is actually incurring expenses for the purchase or lease of a vehicle. If a debtor does not have a loan or lease payment, then the Local Standard for transportation ownership expense is not "applicable." Therefore, if a debtor does not have an actual ownership expense for an automobile, the allowance cannot be deducted on Form B22C.

Further, many courts that have considered this issue have held that a debtor is not entitled to deduct the vehicle ownership allowance on the Form B22C if the vehicle is owned outright. *See In re Slusher*, 359 B.R. 290 (Bankr. D. Nev. 2007) (car ownership allowance disallowed where there is no lien), *In re Devilliers*, 358 B.R. 849 (Bankr. E.D. La. 2007) (debtors do not receive ownership allowances for vehicles owned outright); *In re Barraza*, 346 B.R. 724, 728-29 (Bankr. N.D. Tex. 2006) (debtor cannot take standard ownership allowance for automobile neither financed nor leased); *In re McGuire*, 342 B.R 608, 613-14 (Bankr. W.D. Mo. 2006) (debtor cannot deduct standard ownership expense allowance for cost of owning vehicle if debtor owns vehicle free and clear of liens); *In re Hardacre*, 338 B.R. 718,

15

723-24 (Bankr. N.D. Tex. 2006) (deduction of standard ownership allowance denied where debtor owned vehicle outright).

Again, in devising a Chapter 13 plan, the goal is to determine how much debtors can and reasonably should repay their creditors. Allowing the Debtors to use Schedule I to reduce their Form B22C monthly disposable income while simultaneously allowing them to rely on imaginary Form B22C expenses would be logically inconsistent. Again it could well result in the Debtors paying less than all their projected disposable income into the plan in contravention of § 1325(b). eCAST's objection to the Debtors deducting ownership expenses for the Toyota is, therefore, **SUSTAINED**.

## Starcraft Camper Payment

Among other items, on Line 47a of Form B22C, the Housers claim a secured claims expense of $205.75, the monthly debt payment on their Starcraft Camper. They propose to retain the camper and continue to make those payments to the lender.

eCAST argues that the Debtors' Starcraft camper is a luxury item that should be surrendered and that amount of future income devoted to paying unsecured creditors. eCAST argues that debtors may not divert "projected disposable income" to make secured claim payments on luxury items. The Debtors, counter that the camper is necessary in that it is a source of recreation for them and their minor daughter.

16

Although the monthly payment is relatively small; conceptually, I must side with eCAST.

The Bankruptcy Code allows a debtor deductions for his expenses, it also stipulates that these expenses must be reasonably necessary for the maintenance or support of the debtors or their dependents. 11 U.S.C. § 1325(b)(2). For an above median income debtor, reasonable necessity is determined under 11 U.S.C. § 707(b)(2)(A) and (B). 11 U.S.C. § 1325(b)(3).

Again, § 707(b)(2)(A)(ii) contains a detailed enumeration of expenses that are reasonably necessary. These include such things as additional forms of insurance, support for an elderly or ill household member, and private school tuition.

The continued use and enjoyment of a recreational vehicle like a camper may be desirable; however, it is certainly not reasonably necessary in the same way as these other expenses.

Judge Hodges' *Plumb* case addressed reasonable and necessary expenses in the Chapter 13 context. He concluded that debtors have the burden of proving that such expenses are "actual, reasonable and necessary." *See Plumb*, 373 B.R. 429 (*citing Edmund*, 345 B.R. at 645).

I cannot find the Housers have met that burden on this record. No evidence has been presented to suggest that the camper is necessary for the health and welfare of the Debtors' family or that it is necessary for the production of income. The

17

Housers simply allege that the camper provides them with a source of entertainment. They liken the expense to a charitable contribution. This is insufficient to make the case, if it can be made at all. The Court disallows the $205.75 expense deduction for the camper.

### III. APPLYING PLAN PAYMENTS TO UNSECURED CREDITORS

Finally, and based upon the foregoing, eCAST objects to confirmation of the plan because it diverts "projected disposable income to creditors other than unsecured creditors. 11 U.S.C. § 1325 provides that "**all**…projected disposable income…will be applied to make payment to unsecured creditors under the plan." (emphasis added) The code is clear on this matter, and the Debtors do not argue otherwise.  I must agree.

IT IS THEREFORE **ORDERED** THAT eCAST's Objection to Confirmation of Plan is **SUSTAINED.**

**This Order has been signed**      **United States Bankruptcy Court**
**electronically.  The judge's**
**signature and court's seal**
**appear at the top of the Order.**